Scott, C. J.
This was, in the court below, a proceeding in partition, instituted between the heirs of one Eugene Dutoit, for the purpose of obtaining partition among them, of certain lands which had descended to them on the death of the said Eugene, intestate, in August, 1865.
It is shown by the record that the intestate had eight children, of whom six only survived him; one son, Philip Dutoit, and one daughter, Julia Doyle, having died previously; the former leaving three children, of whom the plaintiff in error is one, and the latter leaving five children, who, together with the brothers of the plaintiff, are defendants in error. The ^question presented for our ¡decision arises solely between the grandchildren, who represent the •deceased children of the intestate, respectively.
The court below, by its order of partition, awarded one-eighth of the land to each of the six living children; and, so far, its order is ■conceded to have been according to law; but as to the remaining two-eighths, or one-fourth of the land, the court ordered an equal division among the eight grandchildren, giving to each the one-eighth of one-fourth, or one equal thirty-second part of the whole, *367 thus placing each of the five children of the deceased Julia on a .footing of equality with each of the three children of the deceased Philip. In this the plaintiff in error claims that the court erred. His claim is, that by the statute of descents governing the case, the .grandchildren take per stirpes, as the representatives of their deceased parents respectively, and not per capita, and, therefore, that the plaintiff and his two brothers are. each entitled to one-third of the one-eighth part which would have descended to their father, Philip Dutoit, if he had survived the intestate; that is, to one-twenty-fourth part of the whole estate; and that the five children •of Julia Doyle are, in like manner, entitled each to one-fifth of the equal eighth part which would have descended to their mother had she survived; that is, to one-fortieth part of the whole estate.
The provisions of the act of March 14, 1853, regulating descents, which control the descent in a case like the present, are to be found in the fifth and seventh sections, which read as follows:
“ Seo. 5. When any person shall die intestate leaving children, and none of the children of such intestate shall have died leaving children, or their legal representatives, such estate shall descend to the ■children of such intestate, living at the time of his or her death, in equal proportions.”
“ Seo. 7. If any of the children of such intestate be living, and •any be dead, the estate shall descend to the children of such intestate who are living, and to the legal representatives of such of his or her children as are dead, so that each child of the intestate, who shall be living, shall inherit the share to which he or she would have been entitled if all the ^children of the intestate had been living, and so that the legal representatives of the deceased child or children of the intestate shall inherit equal parts of that portion of the estate to which such deceased child or children would have been entitled had such deceased child or children been living.”
These sections take the place, at least in part, of the tenth section of the act of February 24, 1831, on the same subject. 3 Chase’s Stat. 1790. That section was as follows:
“Sec. 10. That where any of the before-mentioned children, brothers, sisters, or their legal representatives, in the same degree of consanguinity or kindred, come into partition of any real estate, they shall take per capita; but where one or more of them are dead, and one or more of them are living, the issue of those dead shall *368 have a right to partition; and such issue, in such case, shall take-per stirpes
The rule of descent embodied in this section was always the law in this state, until the passage of the act of 1853. The acts of February 22, 1805, of December 30, 1815, and of February 11, 1824, each contained a section in the very same terms, with the addition only of a definition of the Latin terms, per capita and per stirpes. All these statutes had clearly provided that in case of a descent cast upon children, where some of the children were' living, and others dead leaving issue, the share to which each of the deceased children would, if living, have been entitled, should descend to the issue of each respectively. In the case before us, the court below held that this long-established rule of descent has been so fa? changed by the’ seventh section of the act of 1853, that where the intestate leaves a living child or children, and two or more of his children are dead, severally leaving families of children, unequal in number, such grandchildren of the intestate are entitled to share equally in the aggregate portion of the estate which is made up of the several shares of their deceased parents, without any reference to immediate parentage, or to the inequality of numbers in the several families. Is such the proper construction of that section?
The fifth section of the act very clearly makes no change in the prior law, but it provides only for cases in which none *of the intestate’s children have died leaving children or their legal representatives, and we have quoted it only because it contains the antecedent to which the word “such,” in first line of the seventh section refers. It is equally clear, that so much of the seventh section as prescribes the shares of the living children of the intestate, in a case like the present, leaves the former law on that subject unchanged. The only occasion for doubt arises from the want of precision in the phraseology of the latter part of the section, which, prescribes the shares to be inherited by the representatives of the deceased child or children of the intestate. A close adherence to. its literal terms might seem to warrant, and even to require the construction given to it by the court below. But this whole act is a revision of former statutes on the same subject; and, whore the question is ’as to the intention of the legislature, it is an established rule that “in the revision of statutes, neither an alteration in phraseology nor the omission or addition of words in the latter statute, shall be held necessarily to alter the construction of the- *369 former act. And the court is only warranted in holding the construction of a statute, when revised, to be changed, when the intent of the legislature to make such change is dear, or the language used in the new act plainly requires such change of construction.”
Now, is it clear, from the language employed, that the legislature intended a change in the law as it then stood ? Its terms are, “ that the legal representatives of the deceased child or children of the intestate shall inherit equal parts of that portion of the estate to which such deceased child or children would have been entitled had such deceased child or children been living.” Whatever there is of ambiguity in this part of the section arises from connecting the words “ child ” and “ children ” together, and applying the same phraseology tp both. This creates a doubt whether we are to understand the deceased “ children ” of the intestate as being spoken of collectively or severally. If in the expression, “ that portion of the estate to which such'deceased child or children would have been entitled,” we understand the word “ children ” as being used in a collective sense, then the construction of the court below was right. But if we understand *tho word as being used in a several sense, and meaning the deceased “ children ” respectively, then the law remains as it was before, and the court below erred in its construction. These words, “ child or children,” first occur in speaking of “ the legal representatives of the deceased child or children,” and it is very clear that the word “ children ” must be there understood in a several and not in a collective sense; for, in the case spoken of, each of the deceased children have their own several representatives, and they have none in common; the children of one are not the representatives of the other. The expression, therefore, can only mean “the legal representatives of the deceased child or children ” respectively. And there is nothing in the phraseology to indicate that the same words are used in a different sense where they next occur in close connection with this clause. Shall we, then, without reason, understand, them in a different sense for the mere purpose of working a change in the settled legislative policy of the state ? Unless we do, all ambiguity vanishes, and the law reads thus: “ The legal representatives of the deceased child, or of each of the deceased children of the intestate, shall inherit equal parts of that portion of the estate to which such deceased child or such deceased children would respectively have been entitled, if living.” This reading of the section makes the use of the word *370 “portion” in the singular number entirely proper, and the argument of counsel on that point fails. Each parcener is entitled to a several share or portion of the estate. One has no interest in the share of another, nor, in strictness, could two or more of them be properly said to be entitled to a single share or portion.
Again, the parties before us are grandchildren of the intestate, and he left living children who are his next of kin, being one degree of consanguinity nearer to the intestate than they. The general policy of the statute is to give the inheritance to the next of kin. How, then, do the grandchildren obtain a share of the inheritance ? To prevent their exclusion, the statute adopts the principle of representation. They are lot in, not in their own right as next of kin (which they would be, were the children all dead), but as the representatives of those who, if living, would be the next of kin. Now, *being admitted expressly as “legal representatives,” and because of that character, is it to be supposed that the legislature intended them to share in the portion of one whom they do not-represent ? The children of Julia Doyle are not the legal representatives of their deceased uncle, Philip Dutoit. Did the legislature intend that as representatives they should participate in what would have been his share had he survived? Their mother, Julia Doyle, if living, could claim no such right. As her representatives, can they assert a right which never did nor could accrue to her ? A construction founded on the supposition of an intention apparently so unreasonable, and which would render the statute wholly anomalous, and without precedent anywhere, could only be justified by language of the most clear and explicit character.
Besides, this' statute has now been in operation for thirteen years, and we are much mistaken if the construction given to it in the ■court below is not an entirely new one. Many cases for its application must have arisen annually in the state. And, for obvious reasons, a construction received and acted on generally by the courts and the bar of the state for so many years, should not be lightly changed.
We think the court below erred, and that, in so far as the parties before us are concerned, the order of partition should be set aside, and that the plaintiff in error and the two defendants, Francis and Eugene Dutoit, are each entitled to have one-twenty-fourth part of the premises set off and aparted to them, and that the other defend *371 ants, children of Julia Doyle, are each entitled to no more than one-fortieth part of the land in question.

Ordered accordingly.

Day, White, Welch, and Brinkerhoee, JJ., concurred.